CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/20/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| FAITH HAMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:19-cv-27 |
| | ) |
| JOHNSON SENIOR CENTER, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Faith Hammer ("Hammer"), was insured under the group health insurance coverage provided by her employer, Johnson Senior Center, Inc ("Johnson"). Unfortunately, Johnson allowed that coverage to lapse just as Hammer began extensive treatment for lung cancer causing her to incur almost $300,000 in medical expenses for which she had no insurance. Hammer brought this action under the Employee Retirement Income Security Act ("ERISA") to recover the cost of her treatment against Johnson Senior Center and its principals. The district judge entered Hammer summary judgment against Defendants James Dolan ("Dolan") and Johnson and awarded $300,000.00 in damages. Dkt. 89. Hammer now seeks $111,046.50 in attorneys' fees and $3,535.81 in costs. I **RECOMMEND GRANTING** Hammer's Petition for Award of Reasonable Attorneys' Fees and Costs (Dkt. 92) and awarding $87,424.61 in attorney's fees and $3,4201.01 in expenses.

**I.     Background**

The facts of this case are fully set forth in the district court's November 30, 2020 Memorandum Opinion. Dkt. 61. Hammer filed this action in eight counts of the Complaint

against Defendants Dolan, Johnson as well as Melessa Dolan, and Ashley Canipe. She named only Dolan and Johnson only in Count VI.[1] Dolan and Johnson answered the complaint denying all liability, but, thereafter, took no further action to defend against Hammer's claims. The court granted Hammer summary judgment against Dolan and Johnson finding that Dolan and Johnson failed to remit the Plan assets (insurance premiums) to Anthem (the health insurance carrier) to keep the group health insurance coverage in place (Counts I–III). Dkts. 62, 89. Hammer then voluntarily dismissed Counts IV–VIII against Dolan and Johnson and settled all claims with Melessa Dolan and Ashley Canipe. Dkts. 80, 81, 89.

The district court awarded Hammer the medical expenses she incurred due to Dolan and Johnson's breaches of fiduciary duty under ERISA §§ 409(a), 29 U.S.C. § 1109, and 502(a)(3), 29 U.S.C. § 1132, and entered judgment against these defendants in the amount of $300,000.00. Dkt. 89. Hammer, thereafter, timely submitted her application for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and Fed. R. Civ. P. 54(d)(1). Dkt. 92. Dolan and Johnson did not oppose the application for attorneys' fees and costs. Hammer, in turn, then urged that the failure to oppose the fee application entitled her to an award of the full amount sought. Dkts. 95, 96.

**II.    Applicable Law**

"ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court" when that party has had some degree of success on the merits. Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1028–29 (4th Cir. 1993); 29 U.S.C. § 1132(g)(1); see also Feldman's Med. Ctr. Pharmacy, Inc.

---

[1] Hammer asserted the following Counts against all Defendants: Count I, ERISA Violation of Duty of Loyalty; Count II, ERISA Violation of Duty of Care; Count III, ERISA Violation of Fiduciary Duty by Using Plan Assets for Own Benefit; Count IV, ERISA Violation of Failing to Hold Plan Assets in Trust; Count V, ERISA Violation of Co-Fiduciary Duty; Count VII, Conversion; and, Count VIII, Breach of Fiduciary Duty. She asserted Count VI against Dolan and Johnson only: Count VI, COBRA Violation. Dkt. 36.

v. Carefirst, Inc., 898 F. Supp. 2d 883, 896 (D. Md. 2012) (finding 28 U.S.C. § 1132(g)(1) does not require a party to prevail to qualify for fees, but must have some success on the merits). There is no presumption in favor of attorneys' fees, however. Carolina Care Plan Inc. v. McKenzie, 467 F.3d 383, 390 (4th Cir. 2006), overruled on other grounds by Carden v. Aetna Life Ins. Co., 559 F.3d 256 (4th Cir. 2009). To determine whether a prevailing party should receive attorneys' fees, this court must measure:

> (1) The degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Quesinberry, 987 F.2d 1017, 1029 (4th Cir. 1993). None of these factors are dispositive. Id. See also Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 258 (1st Cir. 1986) ("[F]ive factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees.").

The first factor weighs strongly in favor of awarding fees to Hammer. Bad faith requires "serious misconduct deliberately and intentionally engaged in, for the purpose of harming another or advancing one's self-interest." Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 898 F. Supp. 2d 883, 907 (D. Md. 2012). Culpable conduct is blameworthy or involves a breach of duty, but "normally involves something more than simple negligence." Werner v. Upjohn Co., 628 F.2d 848, 856 (4th Cir. 1980). Courts have regularly suggested that a fiduciary breach is evidence of culpability, if not bad faith. Phillips v. Brink's Co., No. 2:08–cv–31, 2009 WL 3681835, at *2 (W.D. Va. Oct. 31, 2009); White v. Martin, 290 F. Supp. 2d 986, 990 (D. Minn. 2003) ("[A]lthough there is no significant evidence of bad faith by [the defendant], the evidence

3

at trial did conclusively show that she breached her fiduciary duties to the Plan, thus establishing some culpability."); Phillips v. Mar. Ass'n, L.L.A. Local Pension Plan, 198 F. Supp. 2d 838, 844 ("A party's conduct may rise to the level of bad faith where there is a breach of fiduciary duty."); DeFazio v. Hollister, Inc., 854 F. Supp. 2d 770 (E.D. Cal. 2012) ("Based on the court's conclusion that the fiduciary defendants breached their duties, the court finds that this factor weighs in favor of plaintiffs and merits against awarding defendants their attorneys' fees.").

The actions of Dolan and Johnson are certainly culpable if not tantamount to bad faith. They failed to remit employee ERISA contributions, including Hammer's, to the Plan, failed to timely inform Hammer of the lapse in her health insurance coverage, failed to reinstate the Plan despite opportunities to do so, and used the Plan assets to pay off Johnson's other operating expenses to their benefit and Hammer's detriment. These actions significantly impacted Hammer, who incurred medical expenses in excess of $286,000. See Phillips, 2009 WL 3681835, at *2.

Dolan and Johnson's behavior throughout the course of litigation further supports their culpability. See Kinsinger v. SmartCore, LLC, No. 3:17–cv–643, 2019 WL 4026257, at *10 (W.D.N.C. Aug. 27, 2019) (considering behavior during litigation as part of bad faith and culpability analysis); see also Bd. of Trustees of the Greater Penn. Carpenters' Med. Plan v. Schwarzmiller, No. 17–1442, 2021 WL 679988 (W.D. Penn. Feb. 22, 2021) (considering actions by Plan that multiplied the litigation). Here, Dolan and Johnson initially participated in the litigation, answering Hammer's complaint and engaging in some early discovery. Thereafter, they disregarded the litigation, failed to participate and ignored several court orders in the process despite the fact that these defendants were, and currently are, represented by experienced counsel who received notifications from the court's electronic filing system. See, e.g., Dkts. 53,

66, 72, 74. Such actions were contrary to the dictates of Rule 1 "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The second factor weighs neither for nor against awarding Hammer attorneys' fees. Hammer provides no information regarding the ability of either Dolan or Johnson to satisfy an award of attorneys' fees, but given Johnson's financial status as described in the record, it appears that even if better positioned than Hammer to pay that it would not do so without some level of hardship. See, e.g., Wilson v. Perry, No. 3:99–cv–556, 2007 WL 895237, at *2 (E.D. Va. Mar. 22, 2007) (considering "financial problems" of non-movant). Nevertheless, the court will not weigh Dolan's or Johnson's current ability to pay against Hammer's where, they provided no evidence of their ability to do so.

The third factor weighs in favor of awarding Hammer's attorneys' fees. Courts have regularly found that an award of attorneys' fees will deter other plan administrators from breaching their fiduciary duties. See Phillips, 2009 WL 3681835, at *2 ("[Deterrence] carries more weight in this case because the defendants were found in breach of their fiduciary duty."); Phillips v. Mar. Ass'n, 198 F. Supp. 2d 838, 845 (E.D. Tex. 2002) ("[S]ince this court found that there *was* a breach of fiduciary duty in this case, [the third factor] weighs heavily in favor of an award of attorney's fees); see also Koehler v. Aetna Health, Inc., 915 F. Supp. 2d 789 (N.D. Tex. 2013); White v. Martin, 290 F. Supp. 2d 986, 991 (D. Minn. 2003).

As to the fourth factor, Plaintiff's suit sought only to benefit herself, and Hammer does not argue, and the Court does not find, that the case raised a significant or novel legal question regarding ERISA. See, e.g., Clark v. Metropolitan Life Ins. Co., 384 F. Supp. 2d 894, 901 (E.D. Va. 2005) (stating suit that "seeks to benefit [plaintiff] only" weighs against award of attorneys' fees); Phillips, 2009 WL 3681835, at *2 ("Although there is a possibility that others who have

5

suffered from the same [error] will benefit from the ruling in this case, this is not enough to satisfy the fourth factor"). This factor, therefore, weighs against an award of attorneys' fees.

Finally, the fifth factor addresses the relative merits of the parties' positions. As to Dolan and Johnson, the court granted Plaintiff's motion for summary judgment in part, awarding summary judgment as to Counts I–III. In the same opinion, the court found that Counts V–VIII failed as a matter of law and a jury question existed as to Count IV. Dkt. 61. Though the court did not grant summary judgment as to all counts, Hammer prevailed on her fundamental ERISA claims and she obtained a judgment for her actual damages totaling $300,000. A party need not receive all relief sought for this factor to weigh in her favor. Cook v. Jordan & Jones Engineering, Inc., No. 5:06–cv–627, 2009 WL 3169152, at *3 (S.D.W. Va. Sept. 29, 2009); Matlock v. Pitney-Bowes, Inc., 811 F. Supp. 2d 1186, 1192 (M.D.N.C. 2011); see also Hoover v. Bank of Am. Corp., No. 8:02–cv–478T23TBM, 2005 WL 1074290, at *4 (M.D. Fla. Mar. 16, 2015). The analysis is not intended to measure who won or lost, but to weigh the merits of the parties' positions. See Phillips, 2009 WL 3681835, at *4. Here, this factor weighs in favor of an attorneys' fee award because Hammer's position on the fundamental ERISA claim was much stronger than Dolan's and Johnson's position even though several of her claims ultimately failed as a matter of law.

I conclude that the balance of the relevant factors weigh in Hammer's favor of an award of her attorney's fees and costs.

### III. Analysis

Having determined that Hammer should be awarded attorneys' fees and expenses, this court must now determine the award amount. Dolan and Johnson filed no opposition challenging the fees or the expenses sought, and Hammer argues that they "should be deemed to have

conceded [that she] is entitled to an award of attorneys' fees and costs in the amount of $114,582.31." See Dkt. 95. While I consider Dolan and Johnson's failure to oppose the petition and their failure to meaningfully participate in the litigation, I am required to analyze this petition as set forth in McAfee v. Boczar, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014). See Broadcast Music, Inc. v. NLC, Inc., C.A. No. 4:07–cv–2632, 2009 WL 10710626, at *1, 3–4 (D.S.C. July 22, 2009) (considering reasonableness even where defendant filed no response in opposition to fee petition).

### a. Lodestar Calculation

The Fourth Circuit follows a three-step process to determine a reasonable attorneys' fee award. McAfee, 738 F.3d at 88. First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. Id. Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the twelve factors[2] identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009). Second, the court subtracts fees for hours spent on unsuccessful claims unrelated to successful claims. McAfee, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount to the plaintiff, depending on the degree of success of plaintiff's claims. Id. A strong presumption exists that a properly calculated lodestar figure is

---

[2] The Fourth Circuit has construed the Johnson factors as: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and the client; and, (12) attorneys' fee awards in similar cases. Robinson, 560 F.3d at 243–44.

reasonable. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). That presumption may be overcome only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. Id.

### i. Hourly Rates

The reasonable hourly rate for purposes of the lodestar figure is generally the prevailing market rate for comparable services in the community in which the services were rendered. In re Mullins, Civ. A. No. 95–178–A, 1996 WL 148527, at *3 (W.D. Va. Feb. 12, 1996). The determination of the reasonable hourly rate is a fact intensive exercise requiring the fee applicant to produce "specific evidence" of prevailing market rates in the relevant community for similar services in similar circumstances. Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). The relevant legal community is generally that in which the district court sits. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994).

Hammer retained the services of two law firms, Glenn Feldmann and the Childress Law Firm. Glenn Feldmann member, Paul Beers ("Beers"), associate Christopher Collins ("Collins"), and legal assistant Pamela Robertson ("Robertson") billed $350.00, $215.00, and $125.00 per hour, respectively. Dkts. 92, 94. Childress Law Firm member Jimmie Childress, III ("Childress") and legal assistant Krista Bombardier ("Bombardier") billed $320.00 and $125.00 per hour, respectively. Dkts. 92, 94. Hammer contends that such rates are reasonable due to the relative rarity of ERISA breach of fiduciary duty actions and the attorneys' general experience. Dkt. 94. Hammer additionally relies on the declarations of Beers, Collins, Childress, and Brittany Haddox, an employment attorney practicing in the Western District of Virginia. Dkt. 92. Each stated that based on the attorneys' qualifications, the requested rates are equal to or less than the fair market value of their services for a case of this nature and difficulty. Dkt. 94.

The court finds that these billing rates are reasonable given the geographic location of the litigation and the relative complexity of ERISA breach of fiduciary duty actions. See Griffin v. Areva, Inc., No. 6:16–cv–00029, 2016 WL 7736953, at *4 (W.D. Va. Dec. 15, 2016), report and recommendation adopted, Griffin v. Areva, Inc., 6:16–cv–00029, 2017 WL 121073, at *1 (W.D. Va. Jan. 12, 2017) (awarding partner and associate with $375.00 and $250.00 per hour, respectively, in an ERISA action). See also Kling v. Fidelity Mgmt. Trust Co., 323 F. Supp. 2d 132, 138 (D. Mass. 2004) (acknowledging breach of fiduciary duty under ERISA is complex). The court also finds the billing rates reasonable based on the attorneys' experience. These attorneys are known to this court and I am satisfied that they have the professionalism, skill set, and ability to manage this case, as the award of summary judgment demonstrates. See Hurd v. Cardinal Logistics Mgmt. Corp., No. 7:17–cv–00319, 2019 WL 6718111, at *3–4 (W.D. Va. Dec. 10, 2019) (finding rate of $350.00 and $200.00 per hour for Beers and Collins, respectively, to be reasonable in an ADA case); see Dkt. 92–7 (Haddox declaration).

The court similarly finds a rate of $125.00 per hour for a legal assistant reasonable. See Hurd, 2019 WL 6718111, at *3–4 (finding rate of $125.00 per hour to be reasonable for a legal assistant); Supinger v. Virginia, No. 6:15–cv–17, 2019 WL 1450530, at *3 n.7 (W.D. Va. Mar. 4, 2019), report and recommendation adopted as modified, Supinger v. Virginia, No. 6:15–cv–17, 2019 WL 1446988, at *1 (W.D. Va. Mar. 31, 2019).

ii.     **Reasonable Hours**

Hammer's counsel seeks reimbursement for over 500 hours expended in this case (426.9 hours of attorney time and 81 hours of legal assistant time). Dkt. 92. Hammer argues that the hours expended "reasonably reflect the relative complexity of the issues at stake." Dkt. 94. Having reviewed the reports in detail, I find the fee application should be reduced.

9

"The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing Hensley, 461 U.S. at 437). Fee applications are frequently reduced for excessive, redundant, or otherwise unnecessary hours. A court will similarly reduce fees when time entries are vague or block billed as such descriptions "inhibit the court's reasonableness review." Brown v. Mountain View Cutters, LLC, 222 F. Supp. 504, 514 (W.D. Va. 2016); see Hensley, 461 U.S. at 433–34; Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006); Rum Creek Coal Sales, Inc., 31 F.3d at 179.

Here, while there is no block billing or plainly excessive, redundant, or otherwise unnecessary hours, the vast majority of hours recorded by the Childress Law Firm were excessively vague. See Dkt. 92–2. There are multiple entries that state "e-mail" or "phone call" without any additional information regarding who the communication was with or what the communication entailed. Id. There are similarly a large proportion of entries describing e-mails and phone calls to and from counsel without any supporting information.[3] See U.S. ex rel. Cody v. ManTech Int'l Corp., No. 1:16–cv–132, 2017 WL 5146019, at *4 (E.D. Va. Aug. 30, 2017) (finding "reviewed emails" vague). And, even those entries that describe research and work throughout discovery are inadequately documented. See, e.g., id. (requesting hours for entries including "discovery responses," "research," "prepared and sent discovery"); Lamonaca v. Treat Corp., 157 F. Supp. 3d 507, 520 (W.D. Va. 2016) (finding entries including "research" and "work on discovery" excessively vague).

---

[3] Over 40 percent of the hours recorded by the Childress Law Firm amount to such entries. See Dkt. 92–2 (requesting hours for entries including "Email to co counsel," "Call Client" "Email to and from client regarding updates," etc.).

10

Failing to specifically describe the tasks performed requires this court to "labor to dissect" the individual entries to see how they match up with the various claims and the phases of litigation. The Fourth Circuit in Rum Creek Coal Sales recognized this problem, telling attorneys to carefully record their time. 31 F.3d at 179. Even upon careful review, it is difficult to determine how the Childress Law Firm participated in this case. Though member Jimmie Childress is listed as an attorney of record, he did not file any pleadings on the court's electronic docketing system nor did he materially participate in any arguments before the court. Of course, this court does not doubt that a significant amount of work was required of the Childress Law Firm in this matter. Nevertheless, the frequency of the firm's inadequately documented time entries warrants a reduction as these entries undermine my ability to determine the reasonableness of the hours and labor expended by the Childress Law Firm. See Scott v. Clarke, 3:12-cv-00036, 2020 WL 2771949, at *7 (W.D. Va. May 28, 2020) ("Vague time entries are a bigger impediment to the Court's assessment of the reasonableness of Plaintiffs' fee request than block billing."). This is especially so as the attorneys in this matter were surely aware at the outset of this litigation that the case was fee-shifting and, therefore, "that they must keep records to support future fee requests." Whitford v. Sub-Line Assocs., Inc., CV-15-BE-1678, 2017 WL 3620367, at *4 (N.D. Ala. Aug. 23, 2017); see also Doe v. Rector, Case No. 1:15-cv-209, 2016 WL 3480947, at *5 (E.D. Va. June 21, 2016); Infant Swimming Research, Inc. v. Shidler, 505 F. Supp. 2d, 790, 802 (D. Colo. 2007).

Given the pervasiveness of vague entries, a substantial reduction is warranted. I recommend that the vagueness of time entries in the billing records warrants a twenty percent (20%) reduction in [the total] fees awarded to the Childress Law Firm. See Route Triple Seven, L.P. v. Total Hockey, Inc., 127 F. Supp. 3d 607, 621–22 (E.D. Va. 2015).

Additionally, neither Glenn Feldmann nor the Childress Law Firm explain why Dolan and Johnson should be responsible for fees related to litigation and mediation efforts by Melessa Dolan and Ashley Canipe. These defendants significantly contested liability throughout the litigation and much of the docket between July 2019 and the award of summary judgment in March 2021 related to Melessa Dolan and Ashley Canipe's active defense of the case. While Johnson and Dolan initially participated in the litigation and filed their answers to Plaintiff's complaint, these defendants did not generally engage in the litigation after this point. See Dkts. 58, 88 (showing neither Johnson, Dolan, nor counsel attended hearings on Plaintiff's or Melessa Dolan's motion for summary judgment); Dkt. 72 (showing failure to respond to court). Melessa Dolan and Ashley Canipe ultimately settled, leaving Dolan and Johnson, the sole remaining defendants, responsible for satisfying the judgment Hammer obtained. Dkt. 91.

Here, Hammer's attorneys spent multiple hours preparing, researching, and otherwise responding to motions by Melessa Dolan and Ashley Canipe that did not involve Dolan or Johnson. See, e.g., Dkt. 40 (Melessa Dolan's motion for summary judgment); Dkt. 64 (Melessa Dolan and Ashley Canipe's motion in limine); Dkt. 92–1, p. 22 (recording hours relating to Melessa Dolan's motion for summary judgment). Additionally, Hammer, Melessa Dolan, and Ashley Canipe engaged in settlement discussions starting in December 2020 lasting through February 2021 which, again, did not involve Dolan or Johnson. Dkt. 92–1.

The court appreciates that Hammer brought all eight counts against Dolan and Johnson and that the claims against defendants Melessa Dolan and Ashley Canipe are necessarily related to and arise from a common set of facts. Robinson v. Sherman Financial Grp., LLC, No. 2:12-CV-30, 2016 WL 1313082, at *7 (W.D. Tenn. Apr. 4, 2016) ("[A] plaintiff may recover for hours expended on claims against defendants who are ultimately dismissed where those claims

12

are sufficiently factually or legally related to the claims on which the plaintiff prevails against the remaining defendants."). Nevertheless, Hammer should not be able to recover her full attorneys' fees from Johnson and Dolan for work related to filings and settlement discussions involving only Melessa Dolan and Ashley Canipe. See Harvey v. Home Savers Consulting Corp., No. 07–CV–2645, 2011 WL 4377839 (E.D.N.Y. Aug. 12, 2011) ("[C]ourts are reluctant to require a non-settling defendant to bear the full burden of attorney's fees where co-defendants have settled."); U.S. ex rel. Nichols v. Computer Sci. Corp., 12–CV–1750, 2020 WL 6559194, at *11 (S.D.N.Y. Nov. 9, 2020) (finding mediator fee not fairly attributable to remaining defendant as defendant did not participate in mediation). This is especially so given that the case remained active under ERISA and Hammer's settlement negotiations with Melessa Dolan and Ashley Canipe would have necessarily taken into consideration ERISA's fee-shifting scheme.

In analyzing the propriety of assessing the full amount of attorneys' fees against defaulting defendants, multiple courts have considered that awarding a disproportionate amount of fees against the defaulting defendants "would permit some defendants to settle their case at a discount while requiring the defaulting defendants to subsidize the difference." Sugarman v. Vill. of Chester, 213 F. Supp. 2d 312–13 (S.D.N.Y. 2002); see also Refractory Serv. Corp. v. Shaw Refractories, Inc., No. 2:06 CV 073, 2007 WL 118780, at *4–5 (N.D. Ind. Jan 9, 2007); Harvey, 2011 WL 4377839, at *7. I find that same logic applicable here where Dolan and Johnson failed to actively participate in the litigation after filing their answer and where the litigation then continued for almost two years. Accordingly, I recommend an overall ten percent (10%) reduction in billable hours is warranted to account for not only the success achieved against Dolan and Johnson, but also that Hammer settled with Melissa Dolan and Ashley Canipe on the same claims for which she now seeks an attorney fee award.

      **iii.**    **Lodestar Calculation**

| Name | Hours | Rate | Total: |
|---|---|---|---|
| Paul Beers | 40 – 4 (10%) = 36 | $350.00 | $12,600.00 |
| Christopher Collins | 351.30 – 35.13 (10%) = 316.17 | $215.00 | $67,976.55 |
| Pamela Robertson | 60 – 6 (10%) = 54 | $125.00 | $6,750.00 |
| Jimmie Childress | 35.6 – 10.68 (30%) = 24.92 | $320.00 | $7,974.40 |
| Krista Bombardier | 21 – 6.3 (30%) = 14.7 | $125.00 | $1,837.50 |
|  | **Total:** |  | **$97,138.45** |

      **iv.**    **Reduction of the Lodestar Figure to Account for Unsuccessful Claims**

After calculating the lodestar fee, the court must determine whether the fee award should be reduced to reflect the time spent on unsuccessful claims that are unrelated to the successful claims. McAfee, 738 F.3d at 88. The question is whether Hammer's claims involved a "common core of facts or . . . related legal theories." Hensley, 461 U.S. at 435. The Fourth Circuit has repeatedly interpreted related claims to be those that are "inextricably intertwined" with the successful claim. See Abshire v. Walls, 830 F.2d 1277, 1282 (4th Cir. 1987).

Hammer brought claims under ERISA, COBRA, and state law. Yet, while Hammer raised alternative legal grounds, all her claims arise from a common set of facts. See Am. Compl. ¶¶ 8–87; Dkt. 61, p. 32 (finding Hammer's co-fiduciary claim "is the same as the theory under which Hammer argues [] Dolan is liable for his own, primary breach of fiduciary duties."); Dkt. 61, p. 34 (finding Hammer's state law claims were "mere restatements of Hammer's claims under ERISA"); Dkt. 61, p. 35 (describing that while Hammer had no claim under COBRA, the same facts supported her ERISA breach of duty claims). Accordingly, no adjustment to the lodestar is warranted to account for unsuccessful claims.

I do, nevertheless, recognize that Hammer prevailed on only three of her original eight claims. Because the claims arise under the same set of facts, how well Hammer fared on her non-successful claims is more effectively analyzed under the degree of success framework below.

### v. Degree of Success

In the final step of the fee analysis, a court may further reduce the remaining fee amount by a percentage reflecting the prevailing party's "degree of success" on her claims. See Robinson v. Equifax Info. Servs., 560 F.3d 235, 244 (4th Cir. 2009). "[T]he degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award." Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (citing Hensley, 461 U.S. at 436–37). A court must ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." McAfee, 738 F.3d at 92. There is no "precise rule or formula for making this [final] reduction to the lodestar amount," and courts have broad discretion to ensure the ultimate attorneys' fee award accurately reflects a plaintiff's success. Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010) (citing Hensley, 461 U.S. at 436–37); Lux v. Judd, 868 F. Supp. 2d 519, 533 (E.D. Va. 2012) (citing Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)).

In her amended complaint, Hammer asserted eight claims and requested an award of $300,000.00 in actual damages and $350,000.00 in punitive damages in addition to non-monetary relief.[4] On Hammer's motion for summary judgment, the court granted summary judgment against Dolan and Johnson on Hammer's claims relating to their failure to remit Plan

---

[4] The non-monetary relief Hammer requested included the following: (1) a declaration that all defendants violated her rights under ERISA; (2) a declaration that Johnson and Dolan violated her rights under COBRA; (3) attorney's fees, expert witness fees, litigation expenses and costs; (4) prejudgment and post judgment interest on the actual damages, attorney's fees and other sums she recovers; and, (5) a requirement that Johnson's management provide and undergo training in the rights and responsibilities of employees and employers under ERISA and COBRA.

15

assets to Anthem (Counts I–III), denied summary judgment against Dolan and Johnson on Hammer's claim relating to defendants' failure to segregate plan assets (Count IV), and found that Hammer's remaining claims against Johnson and Dolan under ERISA, COBRA, and state law all failed as a matter of law (Count V–VIII). Dkt. 61. The court denied Hammer's motion for summary judgment as to Defendant Canipe, finding a genuine issue of material fact existed as to the ERISA breach of fiduciary claims (Counts I–IV) and similarly finding that the remaining ERISA and state law claims failed as a matter of law (Counts VI–VIII). Dkt. 61. Consistently, on Melessa Dolan's motion for summary judgment, the court denied summary judgment as to Counts I–V, but it granted her summary judgment on Counts VII–VIII. After summary judgment, Hammer reached a settlement with Ashley Canipe and Melessa Dolan and the court dismissed these defendants. Dkts. 80, 81. Hammer then voluntarily dismissed Counts IV–VIII and the court subsequently awarded her actual damages of $300,000. Dkts. 85–1, 89.

  Hammer achieved only partial success, and the court finds that a minor reduction in fees is appropriate. See McAfee, 738 F.3d at 93; Supinger, 2019 WL 1450530, at *9 (quoting Hensley, 461 U.S. at 436) ("[T]he court should reduce an attorneys' fee award to prevent a plaintiff from obtaining 'an excessive amount' in comparison to [her] low measure of success"); O'Fay v. Sessoms & Rogers, P.A., No. 5:08–CV–615–D, 2010 WL 3210948, at *3 (E.D.N.C. Aug. 9, 2010) (finding reduction based on degree of success warranted where several of plaintiff's claims were meritless). Here, Hammer originally asserted eight counts, receiving summary judgment on three. She was awarded her actual, but no punitive damages. Nevertheless, while Hammer was not successful on each claim, she received summary judgment on her core ERISA claims. Her remaining claims were largely secondary, and she voluntarily dismissed them after Judge Moon granted Hammer's motion for summary judgment in part.

Based on Hammer's general success and in light of the reductions already imposed above, the court finds a further ten percent (10%) reduction in fees and costs is warranted. I recommend this reduction recognizing that Hammer prevailed on her central ERISA claims and that all claims involved the same core facts, making it difficult to reduce the fee award based on her failure on one claim without reducing the amount requested for litigation of her other claims. This further reduction brings the total recommended attorneys fee award to $87,424.61.

    b.  **Costs and Expenses**

The court may allow a party that has had some degree of success on the merits to recover reasonable costs. 29 U.S.C. § 1132(g)(1). Hammer seeks $3,535.81 in costs, consisting of: (1) United States District Court Filing Fee, $400.00; (2) Process Service Fees, $290.00; (3) Hammer Deposition Transcript and Reporter Attendance, $494.75; (4) Melessa Dolan, Ashley Canipe, and Kathy Massie Deposition Transcript and Reporter Attendance, $777.00; (5) Copies, $75.80; (6) Postage, $51.90; (7) PACER costs, $40.00; and (8) Electronic legal research fees for Lexis, $1,406.36.

Hammer is entitled to recover those reasonable costs and expenses associated with this case that she can establish with a reasonable degree of specificity. Design and Prod. Inc. v. Am. Exhibitions, Inc., No. 1:10–cv–899, 2011 WL 6002598, at *3 (E.D. Va. Nov. 30, 2011). The law is clear that no litigation costs should be awarded in the absence of adequate documentation. Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995).

Hammer has provided adequate documentation of the filing fee, process servers' fees, deposition fees, postage, and legal research, and I find those expenses reasonable in amount. Taylor v. Republic Servs., Inc., No. 1:12–cv–00523, 2014 WL 325169, at *10–11 (E.D. Va. Jan. 29, 2014) (awarding deposition transcript fees); Elderberry of Weber City, LLC v. Living

Centers-Southeast, Inc., No. 6:12–cv–00052, 2014 WL 3900389, at *17 (W.D. Va. Aug. 11, 2014) (awarding legal research, filing, and service of process fees). I similarly find Hammer's postage costs to be self-explanatory and reasonable and thus, award that expense.

Hammer's request for copying and PACER costs, however, are insufficient. Courts within the Fourth Circuit have required attorneys to provide the purposes for which copies were made or the charge per copy. See Cook v. Jones & Jordan Engineering, Inc., No. 5:06–cv–00627, 2009 WL 3169152, at *6 (S.D.W. Va. Sept. 29, 2009). Hammer has provided neither information regarding the charge per copy nor the specific purposes of the copies. Similarly, Hammer provides no specific information regarding PACER costs beyond several time entries mostly related to checking PACER. This information is insufficient to verify that the amounts sought are accurate and reasonable. Accordingly, I will subtract these amounts from the expenses awarded.

Thus, I recommend an award of expenses totaling $3,420.01.

I.  **Conclusion**

For the reasons set forth above, I hereby **RECOMMEND GRANTING** Hammer's Petition for Award of Reasonable Attorneys' Fees and Costs, Dkt. 92, and **AWARDING** Hammer $87,424.61 in attorney's fees and $3,420.01 in costs.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                                  Entered:  December 20, 2021

                                                  *Robert S. Ballou*

                                                  Robert S. Ballou
                                                  United States Magistrate Judge